ANDREW, J.T.C.
This is a gross income tax case in which plaintiffs, Robert R. and Carol A. Baldwin, appeal from a final determination of the Director of the Division of Taxation which denied their claim for a refund of gross income tax for 1985 and 1986 pursuant to the New Jersey Gross Income Tax Act, N.J.S.A. 54A:1-1 et seq.
As a preliminary matter, it must be noted at this point that plaintiffs have included a claim in their complaint relative to tax year 1986 which was done, according to plaintiffs, because the issue for 1986 is identical to one of the issues implicated in their 1985 tax-year case. Originally, the Director took the position that, inasmuch as there had been no final agency action by the Division of Taxation with respect to plaintiffs’ claim for the 1986 tax year, this court lacked jurisdiction. See N.J.S.A. 54A:9-10; Exxon Corp. v. East Brunswick Tp., 192 N.J.Super. *275 329, 335-336, 470 A.2d 5 (App.Div.1983), certif. den. 96 N.J. 312, 475 A.2d 601 (1984).
In the legal memorandum filed in response to plaintiffs’ cross-motion for summary judgment, however, the Director now advises that he has made a final determination with respect to plaintiffs’ claim for the 1986 tax year that is in accord with the determination made on the same issue for the 1985 tax year. As a result, there is now no impediment to this court considering plaintiffs’ claims for both tax years.
Plaintiffs’ claim for, and defendant’s denial of, a refund of gross income tax for 1985 and 1986 involves two primary issues. The first, which involves both tax years of 1985 and 1986, is whether plaintiffs may deduct the amount of the local property taxes paid by them from their taxable income under the Gross Income Tax Act or whether they are limited to a less beneficial claim for a homestead tax refund.[1] See N.J.S.A. 54A:3A-3, -7, -8, -11. The Director maintains that plaintiffs are limited to the latter. Plaintiffs argue that if this issue is decided against them, based on the Director’s construction of the relevant statutes, then the Director’s interpretation constitutes invalid rule-making under the Administrative Procedure Act (APA), N.J.S.A. 52:A4B-1 et seq.
Plaintiffs also argue that a legal conclusion which precludes them from deducting their local property taxes from their taxable income for gross income tax purposes raises serious questions of whether their state and federal constitutional guarantees of equal protection are being violated.
The second primary issue, which involves only the tax year of 1985, is whether plaintiffs may offset the gain they realized on the sale of their home with a loss they sustained on the sale of their Wheelhorse lawn tractor. See N.J.S.A. 54A:5-1c. The *276 Director asserts that the relevant statutory provisions do not permit the offsetting of gains with personal losses.
In this regard, plaintiffs argue that if the Director’s construction of the relevant statutes does not permit them to offset the gain from the sale of their house with the loss on the sale of their lawn mower, then this interpretation also constitutes rule-making and, is thus, invalid for failure to comply with the provisions of the APA.
On the first issue the Director has moved, and plaintiffs have cross-moved for summary judgment. On the second issue, involving the offsetting of a gain with a personal loss, again, the Director has moved for summary judgment and plaintiffs have cross-moved for summary judgment. The Director, however, resists plaintiffs’ cross-motion for summary judgment on this issue on the basis that if plaintiffs’ interpretation of the law is correct there still remains a “genuine issue as to a material fact,” relative to whether plaintiffs did realize a loss on the sale of their lawn mower.
I.

Are plaintiffs entitled to a choice between a property tax deduction or a homestead tax refund?

Plaintiffs are resident taxpayers of this State who receive a substantial portion of their income from out-of-state, specifically, New York, sources. As such, for tax year 1985, pursuant to N.J.S.A. 54A:4-1, they claimed a credit against their New Jersey gross income tax for the amount of the income taxes imposed by New York City and New York State.
Pursuant to N.J.S.A. 54A:3A-3 (§ 3) of the Homestead Tax Relief Act, N.J.S.A. 54A:3A-1 to -14, plaintiffs, also, claimed a deduction for the local property taxes they paid. Section 3 provides in pertinent part:
*277 a. Each resident taxpayer . . . shall be allowed a deduction from taxable income for property taxes paid on the taxpayer’s homestead ... as follows:
If taxable income is: The deduction is the greater of actual property taxes paid or:
Not over $20,000.00 ... Over $20,000.00 but not $3,250.00
over $50,000.00 $2,600.00
Over $50,000.00 $1,857.00
Based on the tax rates imposed on the various categories of income, the design of the statutory provision is to insure that each resident taxpayer will receive homestead tax relief in a minimum amount of $65. At the applicable tax rates of 2%, 2.5% and 3.5%, relative to the specific category of income, the minimum deductible amounts as set forth in § 3 will produce the stated minimum relief of $65 ($3,250 X 2% = $65; $2,600 X 2.5% = $65; $1,857 X 3.5% = $65).
Plaintiffs assert that they are § 3 resident taxpayers, and since there is nothing in § 3 or in the act, as a whole, that expressly limits the deduction to a specified group of resident taxpayers, plaintiffs are entitled to the deduction.
The Director responds to this argument by pointing to N.J.S. A. 54A:3A-7 (§ 7) of the act which, according to the Director, limits plaintiffs to a homestead tax refund. Section 7 provides as follows:
a. Any citizen and resident of this State who has paid property taxes ... and who has claimed a credit for income taxes paid to other states ... shall be entitled to claim a homestead tax refund as provided in section 8 [N.J.S.A. 54A:3-8] of this act. [Emphasis supplied]
N.J.S.A. 54A:3-8 (§ 8) is the statutory provision for homestead tax refunds. Section 8 was apparently inserted in the act to permit those individuals, eligible for a homestead tax refund but not required to file a gross income tax return, to obtain the refund without having to file a gross income tax return. Section 8, which prescribes the filing of an application form rather than a tax return, provides as follows:
*278 a. Any citizen and resident of this State who has paid property taxes on a homestead ... but who is not required to file a return ... shall be entitled to claim a homestead tax refund as provided in this section.
b. The amount of the homestead tax refund for property taxes actually paid on a homestead shall be $65.00____
c. No homestead tax refund shall be allowed under this section except upon written application therefore to the Director of the Division of Taxation in a form prescribed by him____
The Director asserts that § 7 creates a subclass of resident taxpayers which is comprised of taxpayers who are required to file a gross income tax return and have also claimed a credit for income taxes paid to other taxing jurisdictions. This subclass of taxpayers, which includes plaintiffs, is not entitled to a property tax deduction under § 3, but rather, is limited to a homestead tax refund under § 7 or a maximum credit of $65.
Although there is nothing in the act which expressly limits plaintiffs to the homestead tax refund, the Director argues that such a limitation can be reasonably inferred from the statutory provisions. To begin with, the Director maintains that if § 7 “did not render plaintiffs ineligible for the section 3 deduction, there would be no basis in the act for preventing plaintiffs, or taxpayers like plaintiffs, from claiming both a refund and a deduction.”[2] This, according to the Director, could hardly have been the Legislature’s intention, and thus, § 7 must have been intended to be a limiting provision, and therefore, plaintiffs are limited to a homestead tax refund of $65.
Plaintiffs respond to defendant’s argument by conceding that they cannot claim a double benefit of both a refund under § 7 and a deduction under § 3. As a matter of legal argument, however, they say that N.J.S.A. 54A:3A-11 (§ 11) of the act *279 specifically precludes § 7 taxpayers from claiming both a refund and a deduction. Section 11 provides:
a. No application for a homestead credit refund under section 8 ... shall be approved if a deduction for actual property taxes ... has been taken pursuant to [section] 3 ... of this act.
b. No homestead tax refund allowed in section 8 shall be paid except upon approval by the director of a written application required under ... section 8 of this act. [Emphasis supplied]
As can readily be seen, § 11 denies the homestead tax refund to a taxpayer who has deducted actual property taxes under § 3 of the act. Thus, plaintiffs maintain that the major premise of the Director’s argument is wrong since plaintiffs cannot claim both a refund and a deduction. The Director’s answer is that § 11 does not apply to § 7 taxpayers but only to § 8 taxpayers. This is based on the fact that § 11 precludes approval of “a homestead credit refund under section 8 ... if a deduction for actual property taxes ... has been taken” under § 3. N.J.S.A. 54A:8A-11; emphasis supplied. Thus, the Director maintains that § 11 refers to § 8, not § 7, and is only a limitation on § 8 taxpayers, not § 7 taxpayers. The Director’s position is that the Legislature meant § 8 when it said § 8 and that, when it meant § 7 in other portions of the act, it specifically stated § 7. See, e.g., N.J.S.A. 54A:3A-12.
By way of response, plaintiffs point to a linguistic inconsistency in § 11 which they say supports their contention that § 11 applies not only to § 8 taxpayers, but, also, to § 7 taxpayers. The language used in subsection a. of § 11 states that, “[n]o application for a homestead credit refund under section 8 ... shall be approved if a deduction for actual property taxes ... has been taken” under § 3. N.J.S.A. 54A:3A-lla.; emphasis supplied. The language in subsection b. of § 11 provides, however, that “[n]o homestead tax refund allowed in section 8 shall be paid except upon approval ... of a written application____” N.J.S.A. 54A:8A-llb.; emphasis supplied.
Plaintiffs point out that the word “credit” in the phrase “homestead credit refund” in § 11a cannot be found anywhere in § 8 but can be readily seen, in § 7 and therefore, the *280 Legislature, although specifically referring to § 8, also meant § 7.
I am not persuaded by plaintiffs argument in this regard. A review of the legislative statements appended to Assembly Bill 2982 (1984), which eventually became the Homestead Tax Relief Act, reflects the fact that the Legislature used the phrases “homestead credit refund” and “homestead tax refund” as expressive of the same meaning. For example, the statement of the Senate Revenue, Finance and Appropriations Committee in explanation of the bill provides that, “[h]omeowners ... who are not required to file an income tax return will be able to file an application for a flat refundable credit.” Emphasis supplied. Clearly “credit” was not used in its ordinary sense of a deduction from an amount due. Since nothing is due the State from one not required to file a tax return, the word “credit” was used to indicate a homestead tax refund.
Section 11, itself, supports this construction since subsection a. refers to “homestead credit refund” while subsection b. refers to “homestead tax refund.” There does not seem to be any rational reason for two different meanings to be ascribed to the language used.
Additionally, as the Director points out, the phrase “homestead credit refund” could not have referred to § 7 because, originally, the act did not contain what is now § 7, yet the same phrase “homestead credit refund” appeared in the act exactly as it now does in § 11a. Therefore, the presence of the word “credit” in § 11a does not in any way suggest a reference to § 7 in addition to § 8.
This conclusion, however, does not mean that I am in agreement with the Director’s argument that § 11 does not limit § 7 taxpayers. On the contrary, I find that § 11 does apply to § 7 taxpayers in accordance with the language used in § 7. Section 7 states that the subclass of taxpayers described therein “shall be entitled to claim a homestead tax refund as provided in section 8 of this act.” N.J.S.A. 54A:3A-7; emphasis supplied. Thus, a § 7 taxpayer is treated exactly the same *281 as a § 8 taxpayer for purposes of the homestead tax refund. Clearly, the § 7 taxpayer acquires no greater rights than § 8 taxpayers. Since § 11 limits a § 8 taxpayer to either a refund or a deduction, so, also, is the § 7 taxpayer limited to one or the other.
In other words, § 11 limits not only § 8 taxpayers but also § 7 taxpayers because their claims for homestead tax refunds are made through § 8. Therefore, it was unnecessary for the Legislature to specifically mention § 7 in § 11 because by referring to § 8 it included all § 7 taxpayers making a claim through § 8 of the act.
Thus, since the expression of § 8 in § 11a includes not only § 8 taxpayers but those making a claim through § 8, § 11 does indicate, as plaintiffs claim, that they are entitled to choose between a refund and a deduction. I am of the firm view that if the Legislature were going to discriminate between classes of resident taxpayers, it would have done so expressly. The provisions of § 8 do not exclude § 7 taxpayers from claiming a deduction from taxable income. By the same token, § 7 does not expressly limit the subclass of taxpayers described in § 7 to a homestead tax refund. The Legislature could have easily stated that § 7 taxpayers were limited to a homestead tax refund. It simply did not. I cannot.
The conclusion I have reached on this issue finds support in the Assembly Revenue, Finance and Appropriations Committee statement to Assembly Bill 2982 (1984). The statement indicates that the purpose of § 7 was to “allow commuters to receive [the] full benefit” of the Homestead Tax Relief Act.
Although the major premise of his argument, that plaintiffs would be entitled to both a refund and a deduction if § 7 were not a limiting provision, is not expressly supported by the statutory language in the act, the Director contends that his interpretation “carries great weight and is entitled to prevail, so long as it is not plainly unreasonable.” See Smith v. Director, Div. of Taxation, 108 N.J. 19, 25-26, 527 A.2d 843 (1987). Based on a fair reading of the Homestead Tax Relief *282 Act as a whole, and being mindful of its purpose to provide property tax relief to resident taxpayers on a broad scale, I am convinced that the Director’s limiting interpretation of the act, specifically § 7, is just not reasonable. The Director’s interpretation cannot “add to a statute something which is not there----” Service Armament Co. v. Hyland, 70 N.J. 550, 563, 362 A.2d 13 (1976).
One additional item with respect to this issue requires some brief mention. The Director has brought to my attention the fact that two bills have been introduced in the Legislature, Assembly Bill 4577 (1987) and Assembly Bill 2535 (1988), the purpose of each of which, according to the legislative statements, is to amend § 7 of the act to entitle taxpayers, like plaintiffs, to a choice between a homestead tax refund or a deduction from taxable income. Apparently, the Director wants me to consider this as an expression of legislative intent, in support of his construction of the statute, since these bills are unnecessary if the Director’s interpretation is incorrect. The short answer to this contention has been provided by our Supreme Court in Fraser v. Robin Dee Day Camp, 44 N.J. 480, 210 A.2d 208 (1965) in which it observed:
Assuredly, the mere introduction of a bill some years after the passage of the original enactment can in no way be instructive in determining the intent of the Legislature which enacted the original law. [at 486, 210 A 2d 208] ■
Based on the preceding determination, plaintiffs’ alternative arguments on other grounds need not be addressed.
II.

May plaintiffs offset the gain on the sale of their house with a personal loss?

The New Jersey Gross Income Tax Act sets forth 14 categories of gross income upon which individuals may be taxed. N.J.S.A. 54A:5-1. While losses in one category may offset gains in the same category, losses in one category cannot offset gains in another category. N.J.S.A. 54A:5-2. During 1985 plaintiffs sold a Wheelhorse lawn tractor at an alleged loss of *283 $1,097 and claimed that loss as an offset to the $20,878 gain that they realized from the sale of their home. Plaintiffs claim that they are entitled to the offset in accordance with N.J.S.A. 54A:5-lc. which provides:
Net gains or income from disposition of property. Net gains or net income, less net losses, derived from the sale, exchange or other disposition of property, including real or personal, whether tangible or intangible as determined in accordance with the method of accounting allowed for federal income tax purposes. For the purpose of determining gain or loss, the basis of property shall be the adjusted basis used for federal income tax purposes. [Emphasis supplied]
Although plaintiffs readily concede that the loss from the sale of their lawn mower is a nondeductible personal loss for federal income tax purposes in accordance with § 165(c) of the Internal Revenue Code (IRC), they argue that N.J.S.A. 54A:5-lc. does not limit offsetting losses to those losses which are recognized for federal tax purposes.
Plaintiffs maintain that § 165(c) of the IRC, which limits the deduction of losses to those incurred in a trade or business, transactions entered into for profit or in connection with certain casualties, is a substantive limitation which is not expressly or inferentially incorporated in N.J.S.A. 54A:5-lc. The fact, therefore, that the sale of their lawn mower produced a personal loss which does not fall within any of the allowable categories under § 165(c), and thus, was not deductible for federal tax purposes does not prevent plaintiffs from setting off their alleged personal loss on the lawn mower from the gain they realized on the sale of their house.
Specifically, plaintiffs argue that the language of N.J.S.A. 54A:5-lc. which provides, “net gains ..., less net losses, derived from the sale ... of property ... as determined in accordance with the method of accounting allowed for federal tax purposes,” permits the offset they seek.
They interpret the phrase “method of accounting allowed for federal tax purposes” to mean simply an acceptable overall method of accounting such as a cash basis method or accrual basis method. They, then, maintain that they are cash basis taxpayers for federal tax purposes pursuant to § 451 of the *284 IRC, and therefore, are permitted to deduct their personal loss from their realized gain consistent with the cash method of accounting.
I find that plaintiffs’ interpretation of the phrase “method of accounting allowed for federal tax purposes” is much too restrictive. This phrase as used in N.J.S.A. 54A:5-lc. is not limited to the recognized overall methods of accounting, such as the cash method or accrual method, but rather was intended to include any method or system as used for federal tax purposes “by which taxpayers determine the amount of their income, gains, losses, deductions and credits, as well as the time when such items must be realized and recognized.”[3] See 10 Federal Tax Coordinator 2d (December 1987 ed. Research Institute of America), ¶ G-2001 at 24,103-24,104.
Plaintiffs take the phrase “method of accounting” out of its environment and seek to determine its meaning in isolation. Specifically, plaintiffs argue that the phrase “method of accounting” as used by the Legislature is strictly an accounting concept and that the Legislature did not intend to adopt the substantive rules of § 165(c) of the IRC or it would have done so expressly.
I am not persuaded by plaintiffs’ argument in this regard. N.J.S.A. 54A:5-1c. was enacted by the Legislature with federal income tax concepts in mind, which is why it specifically referred to methods “allowed for federal income tax purposes” in the context of determining gains or losses for tax purposes. If the Legislature had strictly an accounting concept in mind, as plaintiffs argue, then the Legislature would have used the language “as determined in accordance with generally accepted methods of accounting” or “as determined in accordance with generally accepted accounting principles and practices” instead *285 of “as determined in accordance with the method of accounting allowed for federal income tax purposes.”
This was clearly recognized by our Supreme Court in the context of the Gross Income Tax Act in Smith v. Director Div. of Taxation, 108 N.J. 19, 527 A.2d 843 (1987). The Court observed that:
... when the Legislature intended to incorporate federal income tax concepts, it did so explicitly. For example, N.J.S.A. 54A:5-lb, provides that net profits from business be determined in “accordance with the method of accounting allowed for federal [income] tax purposes.” [at 33, 527 A.2d 843]
Moreover, subsection b. of N.J.S.A. 54A:5-1 indicates that the Legislature sought a much broader meaning to be applied to the phrase “method of accounting” than simply the overall accounting methods of cash basis method or accrual basis method. In defining net profits from a business, as part of taxable gross income, the Legislature provided that New Jersey gross income shall include:
b. Net profits from business. The net income from the operation of a business, profession, or other activity, after provision for all costs and expenses incurred in the conduct thereof, determined either on a cash or accrual basis in accordance with the method of accounting allowed for federal income tax purposes____ [N.J.S.A. 54A:5-1b.]
If, in fact, plaintiffs’ limited interpretation of the phrase “method of accounting” were intended by the Legislature it would have been unnecessary to provide for “either on a cash of accrual basis” in subsection b. because that would be included within the language that follows, i.e., “in accordance with the method of accounting allowed for federal income tax purposes.” See Abbotts Dairies v. Armstrong, 14 N.J. 319, 327-328, 102 A.2d 372 (1954) (a construction that renders a part of a statute superfluous will be avoided). It becomes apparent, then, that what was intended was gains or losses that are recognized for federal income tax purposes in accordance with established federal income tax accounting procedures for measuring allowable gains and losses.
The Director argues that this conclusion is also supported by the language in subsection c. of N.J.S.A. 54A:5-1 which provides that in determining gain or loss from the disposition of *286 property, “the basis of property shall be the adjusted basis used for federal income tax purposes.” Plaintiffs assert that this provision simply informs a taxpayer as to the method to be employed in measuring the amount of gain or loss, but does not require that the taxpayer actually have an allowable loss for federal income tax calculations.
In essence, the Director argues, in response, that the Legislature clearly intended to incorporate federal income tax concepts, including the substantive rules of § 165(c) of the IRC, “for the purpose of determining ... loss.” Emphasis supplied. The Director emphasizes the fact that the statute provides that, “for the purpose of determining ... loss, the basis of property shall be the adjusted basis used for federal tax purposes.” Inasmuch as plaintiffs’ loss is not deductible under § 165(c) of the IRC, the Director maintains that no adjusted basis is actually “used for federal income tax purposes” even though hypothetically it could be so used.
In light of the relevant legislative history of the Gross Income Tax Act and the common sense of the situation, I find that the Director’s interpretation is readily inferable from the statutory language, manifestly reasonable, and thus, must prevail. See Commissioner v. Engle, 464 U.S. 206, 224, 104 S.Ct. 597, 608, 78 L.Ed. 2d 420, 434 (1984) (with respect to federal tax law the choice among reasonable interpretations is for the Commissioner of Internal Revenue, not the courts); see also Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 478 A.2d 742 (1984) (“the agency’s interpretation of the operative law is entitled to prevail, as long as it is not plainly unreasonable.” Id. at 327, 478 A.2d 742).
As noted by the Director, the history of the Gross Income Tax Act demonstrates that it was designed to avoid tax shelter devices and various tax loopholes. See Smith v. Director, Div. of Taxation, supra, 108 N.J. at 30-33, 527 A.2d 843. The Director points out that allowing plaintiffs to deduct a personal loss from the gain realized in the sale of their house would not only create a new tax loophole contrary to legislative *287 purpose, but would be of “virtually unlimited magnitude.” If plaintiffs’ construction of the statute were correct, then, the Director notes, the offsetting of gains with personal losses from sales of automobiles, used furniture and clothing would logically be permissible.
Although plaintiffs concede that allowing the offsetting of personal losses could be viewed as a tax loophole, it is one, they argue, which the Legislature could have easily avoided by using the phrase “less net losses other than personal losses” instead of the phrase “less net losses.” To the contrary, however, I find that if the Legislature had intended to permit the offsetting of personal losses, a clear deviation from federal income tax practice, it would have expressly set forth a provision to that effect, especially in light of the avoidance-of-tax-loophole objective of the act.
Additionally, the legislative history of the act clearly demonstrates that the Legislature was concerned with providing a relatively simple and administratively feasible formula for measuring the gains or losses from the disposition of property. See the legislative statement appended to Assembly Bill 1513 (1976). It chose to do so by using federal tax concepts rather than becoming enmeshed in the complexities and administrative difficulties attendant upon, as the Director observes, “keeping track of and verifying the multitude of personal losses which would undoubtedly be claimed.”
In short, I conclude that the Director’s construction of the legislative language is clearly sensible and reasonable.
Plaintiffs contend, however, citing Metromedia, Inc. v. Director, Div. of Taxation, supra, that the Director’s interpretation of the relevant statutory language constitutes the impermissible process of rule-making by ad hoc adjudication rather than through the promulgation of a regulation pursuant to the APA, N.J.S.A. 52:14B-4(d).
I find, however, that the Director’s interpretation is plainly inferable from the language of the statute itself, and therefore, there was no need for the Director to have first adopted a *288 formal regulation. See Airwork Ser. Div. v. Director, Div. of Taxation, 97 N.J. 290, 301, 478 A.2d 729 (1984); R.H. Macy & Co., Inc. v. Director, Div. of Taxation, 77 N.J.Super. 155, 179-180, 185 A.2d 682 (App.Div.1962), aff’d o.b. 41 N.J. 3, 194 A.2d 457 (1963).
In sum, plaintiffs’ cross-motion for summary judgment, with respect to the issue of whether they are entitled to a choice between a property tax deduction or a homestead tax refund, is granted. The Director’s motion on this issue is denied. The Director’s motion for summary judgment, with respect to whether plaintiffs may offset the gain on the sale of their house with a personal loss, is granted. Plaintiffs’ cross-motion for summary judgment on that issue is denied. The parties are directed to submit agreed upon calculations in accordance with this opinion within 14 days pursuant to R. 8:9-3. In the event they are not able to agree, the parties are directed to follow the provisions of R. 8:9-4.

lf plaintiffs may deduct the local property taxes which they paid from their taxable income the net result is a credit of $77.68 against the gross income tax due the State for 1985. If plaintiffs, however, are limited to a homestead tax refund the credit is only $65.

The Director has also argued that § 7 is a specific statutory provision, and thus, according to a well-established rule of construction, must prevail over the more general provision found in § 3. This adds nothing to the Director’s primary argument since a specific provision will control a general provision only when there is a conflict in the statutes. If plaintiffs are not entitled to both a deduction and a refund but rather must elect one or the other then there is no conflict in the statutes, and therefore, the Director's argument although expressed in two different ways is essentially one and the same.

The authors of the Federal Tax Coordinator point out that neither the IRC, nor IRS regulations and rulings, nor judicial decisions define "method of accounting.” 10 Federal Tax Coordinator 2d (December 1987 ed. Research Institute of America), j[ G-2001 at 24,103.